**UNITED STATES of America**

v.

**Peter A. CRUSCO and Phillip A. Cimmino.**

**Appeal of Phillip Cimmino.**

**No. 75–2325.**

United States Court of Appeals, Third Circuit.

Argued March 26, 1976.

Decided May 27, 1976.

---

**2.** This judgment provided, *inter alia*, as follows:

"This matter having come before the Court on cross-motions for summary judgment by Plaintiff and Defendant . . . and the Court being satisfied that none of the material facts are in dispute . . ., it is Ordered: That summary judgment is entered in favor of the Defendant, and the Plaintiff's cause of action is dismissed, and it is further

Ordered: That the appropriate pleadings on behalf of Plaintiff and Intervenor are to be filed with this Court not later than April 18, 1975."

It is clear that such judgment does not "direct the entry of a final judgment as to . . . fewer than all of the claims or parties . . . upon an express determination that there is no just reason for delay . . . ." See F.R. Civ.P. 54(b).

Lawrence A. Dubin, Russo & Dubin, New York City, for appellant.

Jonathan L. Goldstein, U. S. Atty., Mary-anne T. Desmond, Asst. U. S. Atty., Newark, N. J., for appellee.

Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This is another of the recurring appeals which stem from imprecise language used by the parties in the bargaining process preceding a guilty plea. Appellant Phillip A. Cimmino was charged with one count of conspiracy to distribute and possess with intent to distribute Schedule I controlled substances and a second count of possession with intent to distribute and distribution of 470.7 grams of heroin hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).[1] Cimmino initially pleaded not guilty to both counts, but after four and a half years of pre-trial proceedings he was permitted to retract his plea and to plead guilty to Count II in exchange for a maximum sentence of seven years and the prosecution's promise to take no position on sentencing.

The district court sentenced Cimmino to six years' imprisonment with an additional three years' special parole as required by 21 U.S.C. § 841(b)(1)(A).[2] Immediately upon sentencing, Cimmino sought to withdraw his guilty plea on the grounds that he was misled as to the maximum sentence he faced and that the Government had broken its promise not to take a position on sentencing. The court denied his application and imposed sentence. Cimmino appealed his conviction to this court. We reverse and remand for further proceedings.

### I.

The record of Cimmino's plea proceedings reveals that the judge conscientiously explained the operation of "special parole," which in Cimmino's case would mandate a parole term of at least three years in addition to any custodial sentence he received under section 841.[3] Cimmino heard the judge's exposition twice, once to his co-defendant and once to himself, and asked no questions at any time. When queried at several points in the proceedings if he understood, Cimmino responded that he did.

Moreover, while protesting his sentence, Cimmino admitted that he knew special parole was applicable to him and accurately restated its terms. Hence, we cannot agree with the assertion in his brief to this court that he "misunderstood that special parole would be imposed in addition to his jail term."[4]

The record, however, does reveal that Cimmino may reasonably have understood the promised maximum sentence of seven years to encompass the three year special parole term, rather than being in addition thereto. Before accepting Cimmino's plea, the court heard the Government explain the plea agreement:

1. 21 U.S.C. § 841(a)(1) (1971) provides in pertinent part:

   (a) [I]t shall be unlawful for any person knowingly or intentionally—

   (1) to . . . distribute, or dispense, or possess with intent to . . . distribute, or dispense, a controlled substance . . . .

   21 U.S.C. § 841(b)(1)(A) provides in pertinent part:

   In the case of a controlled substance in schedule I . . . such person shall be sentenced to a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both.

2. 21 U.S.C. § 841(b)(1)(A) (1971) provides in pertinent part:

   Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 3 years in addition to such term of imprisonment . . . . .

3. The judge explained special parole by example:

   If I send you away to an institution, let's say for five years, you're parolled [sic] after two years. You now owe the Government three years of that regular parole, but you also put on a special parole for three years on top of the other three.

4. Thus, *United States v. Wolak*, 510 F.2d 164 (6th Cir. 1975), and *Michel v. United States*, 507 F.2d 461 (2d Cir. 1974), which concern defendants who allegedly did not understand they were subject to a special parole term, are inapposite in the instant case.

The defendant would plea[d] guilty to the second count and the first count will be dismissed at the time of sentencing. Additionally, the Government would take no position as to maximum sentencing imposed in this case, not to exceed seven years.

Addressing himself to Cimmino, the district judge paraphrased the agreement:

Court: At the time of sentencing, Count I will be dismissed and if this Court sentences you to more than seven years in this particular case, you'll be permitted to withdraw that particular plea, right?

A: Yes, sir.

Q: Do you understand that?

A: Yes.

Q: With the special parole on top of the regular parole?

A: Yes, sir.

At sentencing, five months later, the court imposed upon Cimmino a custodial sentence of six years to be followed by three years' special parole. Immediately Cimmino asked to withdraw his guilty plea, stating that he had agreed to a seven year maximum sentence and the judge had given him, in effect, with the special parole term, a nine year sentence. He stated that he was under the impression "that the maximum I could get is four years [imprisonment] and three years special parole, that is, seven years."

We note that neither the Government nor the district judge specified that the maximum sentence of *confinement* would be seven years. Rather, both spoke in the broader term of *sentence* and not *confinement.* Black's Law Dictionary 1528 (4th ed. rev. 1968) defines sentence as "[t]he judgment formally pronounced by the court . . . upon the defendant after his conviction in a criminal prosecution, awarding the *punishment* to be inflicted." (Emphasis supplied.) The definition clearly encompasses a special parole term.

In addition, as any sentence imposed under section 841(b) must include the special parole term, a seven year sentence thereunder may reasonably be construed to consist of four years' imprisonment and three years' special parole. We are persuaded that Cimmino reasonably could have misunderstood the length of time he would be subject to Government custody and supervision under a sentence "not to exceed seven years."

Having determined that Cimmino may well have been confused regarding the maximum sentence he faced, we must then consider the legal consequences that flow from this confusion.

■ Courts naturally look with a jaundiced eye upon any defendant who seeks to withdraw a guilty plea after sentencing on the ground that he expected a lighter sentence. *Sullivan v. United States,* 348 U.S. 170, 174–175, 75 S.Ct. 182, 99 L.Ed. 210 (1954); *Johnson v. Massey,* 516 F.2d 1001, 1002 (5th Cir. 1975); *Paradiso v. United States,* 482 F.2d 409 (3d Cir. 1973); *Masciola v. United States,* 469 F.2d 1057 (3d Cir. 1972) (per curiam). However, cases of disappointed but unfounded expectations must be carefully distinguished from those in which the defendant's expectations as to his sentence are predicated upon promises by the Government or statements from the court. *United States v. Maggio,* 514 F.2d 80, 87 (5th Cir. 1975), cert. denied, 423 U.S. 1032, 96 S.Ct. 563, 46 L.Ed.2d 405, 44 U.S. L.W. 3358 (1975); *United States v. Valenciano,* 495 F.2d 585, 588 (3d Cir. 1974).[5]

■ Where the record shows that "circumstances as they existed at the time of the guilty plea, *judged by objective standards,* reasonably justified his mistaken impression," a defendant must be held to have entered his plea without full knowledge of the consequences and involuntarily. *Mosher v. Lavallee,* 491 F.2d 1346, 1348 (2d Cir.) (citations omitted), cert. denied, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974). In the instant case, there is sufficient objec-

---

**5.** *See also Moorhead v. United States,* 456 F.2d 992, 995 (3d Cir. 1972); *United States v. Parrino,* 212 F.2d 919, 921 (2d Cir.), *cert. denied,* 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954); *United States v. Shneer,* 194 F.2d 598, 600 (3d Cir. 1952).

tive proof on the record in statements by the Government and the district judge to support Cimmino's claim that he misunderstood the maximum sentence he faced.

■ Cimmino's guilty plea was accepted at a time when Rule 11 required that defendants be informed of the "consequences of the plea."[6] This court in *Berry v. United States,* 412 F.2d 189 (3d Cir. 1969), specified that this language required that the pleader be made aware of the "outer limits of punishment," at least as to the maximum period of incarceration possible. *See also United States v. Hawthorne,* 532 F.2d 318, at 321 (3d Cir. 1976); *United States v. Maggio, supra,* 514 F.2d at 87. Our analysis of the interaction between the district judge and Cimmino prior to sentencing reveals that Cimmino was not unambiguously informed of the maximum punishment he faced. The failure, although inadvertent, to inform Cimmino that he faced a maximum of seven, not four, years of incarceration and a special parole term of not less than three years violates Rule 11's mandate that defendants be informed of the consequences of their plea. Failure to comply strictly with the rule entitles a defendant to withdraw his guilty plea and to plead anew. *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

## II.

Cimmino's second argument concerns the Government's attack on his character despite the latter's promise not to take a position on sentencing. At the sentencing hearing, Cimmino's attorney had pleaded for leniency, citing the needs of Cimmino's wife and his two young children, his personal integrity and honor, and the belief that "by no stretch of the imagination is he a heavy weight or person in a position to deal in large quantities of drugs, although that seems to be the allegation by the members of the Drug Enforcement Administration and the United States Attorney's office."

The Government, after first agreeing to abstain from taking a position on sentencing, responded:

First of all, as to Defendant's status, elevation in organized crime hierarchy, particularly narcotics  .  . .. As the Court well knows through sitting through many months of hearings, the end result was that Cimmino sold a half kilo of almost pure heroin to the undercover agent, and that the entire facts surrounding this transaction were that it was to be a sample  .  . .. I think this shows the type of individual he is.

I think it shows the importance in organized crime that he has and also shows the danger to the community that this man has by being out in the street.

I think it is made manifest by the fact that when he is out on bail in this case he was arrested and indicted again on another conspiracy charge in which  .  .  . he offered against multi-kilogram quantities of high caliber heroin.

The Government seeks to justify its commentary on three grounds. First, it contends that Cimmino's attorney had misrepresented the facts, and the Government had an obligation to set the record straight. Second, it claims that the express declaration both at the beginning and at the conclusion of the prosecutor's remarks that it was leaving the sentencing decision to the judge excuses its brief comment. Finally, the Government at oral argument in this court stated its view that an agreement "to take no position on sentencing" only refers to a recommendation of the terms of the sentence to the district court and does not require the Government to stand mute, especially in the face of misrepresentations by the defendant to the court.

■ As to the first argument, it does not appear that Cimmino's counsel was making anything more than a paradigmatic argument for leniency in sentence. If there were elements of hyperbole present, it seems that the Government foreclosed any

---

**6.** Rule 11(c), as amended effective December 1, 1975, is now more specific in its required "advice to defendants." The defendant must now be informed by the court, *inter alia,* of the "maximum possible penalty provided by law."

response by its unqualified promise not to take a position on the sentence. In addition, as the Government itself acknowledged, the court had all the information before it and was capable of forming its own impressions without the assistance of the Government.

■ The self-serving statement that it was fulfilling its part of the plea bargain and leaving the sentencing to the judge does not justify the Government's remarks even if the judge was not moved by them. In *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), on which Cimmino largely relies, the United States Supreme Court was not swayed by the district judge's assurance that he was not influenced in his sentencing by the prosecutor's recommendation. The question facing the *Santobello* court and this court is whether the prosecutor fulfilled his promise when the guilty plea rested on it "in any significant degree." *Id.* at 262, 92 S.Ct. 495.

In *Santobello,* the prosecutor had promised not to recommend a sentence, but a new prosecutor did so. Although the circumstances of the instant case are not quite as blatant, the Government did promise to take no position on sentencing. Nonetheless, at sentencing it portrayed Cimmino as a major figure in organized crime who would endanger the community if he were on the streets. We see the Government's characterization as a transparent effort to influence the severity of Cimmino's sentence. Only a stubbornly literal mind would refuse to regard the Government's commentary as communicating a position on sentencing.

■ The Government's final argument that it would have breached the plea bargain only if it had actually recommended the terms of a sentence is thus answered. We believe that such a strict and narrow interpretation of its commitment is untenable, and we must reject it. An unqualified promise of the prosecution not to take a position on sentencing obviously jeopardizes the Government's position in the sentencing process and may require the Government to remain silent when it should stand up and speak. The Government, therefore, must also clearly understand the scope and depth of its commitment and the need for precision in plea bargaining. It may reach port in the plea bargaining process but founder there because of careless or loose language in its commitment. Once it makes a promise, *Santobello* requires strict adherence.

### III.

■ In view of the unkept plea bargain and of Cimmino's justifiable misunderstanding regarding the maximum sentence, the district court erred when it refused to permit Cimmino to withdraw his plea. Fed. R.Crim.P. 32(d) provides that "to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." [7]

■ Where there is denial of due process, there is "manifest injustice" as a matter of law. *United States v. McGahey,* 449 F.2d 738 (9th Cir. 1971) (per curiam). Thus, the court's discretion under Rule 32(d) is strictly curtailed whenever a constitutional violation is shown. *United States v. Washington,* 341 F.2d 277, 281 n. 3 (3d Cir.), *cert. denied,* 382 U.S. 850, 86 S.Ct. 96, 15 L.Ed.2d 89 (1965); 8A Moore's Federal Practice ¶ 32.07[4] at 32–108.1 (1975).

7. The A.B.A. Standards Relating to Pleas of Guilty § 2.1 (Approved Draft, 1968) set forth the following guidelines:
   (a)(ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant proves that:
   \* \* \* \* \* \*
   (3) the plea was involuntary, or was entered without knowledge . . . that the sentence actually imposed could be imposed; or
   (4) he did not receive the . . . sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.
   The comments state that § 2.1(a)(ii)(4) "is consistent with the prevailing view that unkept plea agreements are a basis for withdrawal." *Id.* at 57.

Since the Government's promises, as reasonably understood by Cimmino when he entered his plea of guilty, were not fulfilled, Cimmino was denied due process. Therefore, he is entitled to withdraw his guilty plea. *Dugan v. United States,* 521 F.2d 231 (5th Cir. 1975).

The judgment of the district court will be reversed and the case remanded for further proceedings.