# STATE OF FLORIDA v RATTNER

### Case No. 85-5927

Eleventh Judicial Circuit, Dade County

March 28, 1986

## APPEARANCES OF COUNSEL

**Janet Reno,** State Attorney, and **Bruce Reich,** Assistant State Attorney, for plaintiff.

**Bennett Brummer,** Public Defender, and **Steven Levine,** Assistant Public Defender, for defendant.

## OPINION OF THE COURT

PHILIP BLOOM, Circuit Judge.

### *ORDER OF DISMISSAL*

THIS CAUSE duly came before the Court for a hearing on Defendant's Motion for Specific Performance of an alleged plea agreement and other motions relating to Defendant's contention that the State of Florida cannot maintain the pending Information or any of the charges

therein and that the same be dismissed, or that the Defendant be discharged from prosecution in this cause. The Court, at the urging of the attorneys for the parties, held a hearing, took testimony and other evidence, gave the victim, McDermott (who appeared at the hearing), an opportunity to be heard, reviewed the law and heard oral argument of respective counsel. This cause was reassigned to this Division after it appeared that Judge Morphonios might be a witness in this case.

## I. *Factual Background*

While the facts are not unique or complex, the contentions of the parties and the victims have generated a good deal of heat and perhaps also ill will. The Court shall review the facts and the contentions of the concerned interests and shall rule on the Motion for Specific Performance dispassionately, based on the facts adduced at the hearing and upon the law, without regard to the merits of this case except in so far as they relate to the existence of, or impact upon, an alleged agreement between the State Attorney's office and the Defendant through their duly authorized attorneys.

Defendant, Steven Rattner, was arrested on January 17, 1984 and taken into federal custody. Thereafter an Information was filed in the federal court charging Rattner with a single count of mail theft, in Case No. 84-122-Cr.-EBD (US. DC So. Dist. Fl.). As a result of negotiations between Defendant's attorney and an Assistant United States Attorney, a plea agreement was entered into on January 30, 1984. Pursuant thereto, Defendant pleaded guilty and was sentenced by the United States District Judge, to four years. Pursuant to that agreement, Defendant gave a full and complete accounting of his involvement with respect to stolen mail and with respect to various crimes involving victims in a State Court investigation. Subsequently, a five (5) count Information was filed in State Court, which fell before the Honorable Judge Ellen Morphonios as Case No. 84-1873. That Information charged Defendant with forgery, uttering a forged instrument, grand theft in two counts, and dealing in stolen property. On August 16, 1984, Defendant's counsel and the Assistant State Attorney then handling the case (hereinafter "Assistant") attempted to plead the Defendant before Judge Morphonios. However, the case was reset for September 4, 1984, to allow the Assistant additional time to cure a problem then existing with respect to the matter. The Assistant noted to Judge Morphonios that "we run into a problem"; "my problem is there is some other stuff that is going on", and that he "plans on finding out something before the end of next week", so the Assistant can report back to the Court. On September 4, 1984, the Assistant and

2

Defendant's attorney pled Mr. Rattner guilty before Judge Morphonios who sentenced Mr. Rattner to four years concurrent with the federal sentence.

Approximately five months after the plea was taken by Judge Morphonios, on February 25, 1985, a twenty-seven count Information was filed by the State Attorney's Office as Case No. 85-5927.

## II. *The Contentions of the Parties*

Defendant contends that the instant Information (85-5927) and the charges therein against Defendant were filed contrary to the understanding of the parties at the time of the plea agreement before Judge Morphonios on September 4, 1984, and are therefore a nullity or are barred, since the alleged agreement should be specifically enforced.

The State contends that the plea agreement of September 4, 1984, did not and could not satisfy the then pending investigation relating to the instant case and that no such agreement was reached or even suggested. Unfortunately, the transcribed colloquies before Judge Morphonios of August 16, 1984 and September 4, 1984 do not contain direct evidence of such an agreement as urged by the Defendant. However, those transcripts indirectly suggest an agreement or at least a "problem" with respect to the pending investigation against the Defendant.

## III. *The Hearing*

The parties presented testimony in their behalf in an attempt to support their respective positions, and the Court heard from Defendant, Defendant's then attorney, and the Assistant handling the matters against Defendant at the relevant time in mid 1984. The parties stipulated into evidence the transcripts of the colloquies before Judge Morphonios on August 16, 1984 and September 4, 1984, and there was admitted into evidence two letters each dated September 7, 1984, directed to the State Attorney from the victims, all of which the Court read with interest.

The testimony of the two attorneys testifying before the Court was revealing as to what they thought the facts were in mid 1984 as to any alleged agreement. The Court observed their demeanor, heard their words and adjudged their credibility, and applied everyday experience and reason to their testimony with respect to plea agreements and pending investigations. This Court must be candid in concluding that the narration by the Assistant was somewhat disappointing as being hypothetical, inconclusive, and at times contrary to reason and custom. Especially glaring was any statement of record as to what the "prob-

3

lems" were as alluded to by the Assistant during a colloquy before Judge Morphonios, and the manner in which those problems were to be handled or resolved. As an aside, it should be noted that during this critical time frame, the victim McDermott was in "constant" communication with the Assistant handling the matters against the Defendant, except that immediately after the taking of the plea of September 4, 1984, the victim McDermott emotionally complains to the State Attorney that the victims were not notified as to the date of a proposed plea, as to the terms of a proposed plea, as to any negotiations relating thereto, or of the "closing out" of the matters against the Defendant Rattner, and they chastise the Assistant for his behavior on these scores at that time.

The Court well understands the victims' ultra sensitive feelings of being defrauded by Defendant and then feeling neglected by the Assistant. This Court looks to the victims' two (2) letters of September 7, 1984 for guidance as to what would have caused the victims' outrage and any facts which might shed light on what the State and the Defendant understood or interpreted the plea agreement of September 4, 1984 to embrace or mean. It is clear from these letters and the testimony that the only source of the information in the letters was from the Assistant handling the Rattner matter(s) and may be deemed in the nature of admissions on the part of the Assistant.

In the two page letter of September 7, 1984 victim McDermott states:

"Detective Miles (DCPD), the officer filing the arrest warrant, was not even notified and was surprised when I told her of the completed court action".

. . . . . . . . . . .

"Prior to the court action, Mr. Horn knew I was vehemently against a 4 year concurrent sentence; he was advised the charges were incomplete, that myself and the other victims wanted to be involved, wanted a court trial and wanted to be heard at that trial".

. . . . . . . . . . .

"That the State Attorney review the possibility of requesting the recent court decision be reevaluated and possibly set aside".

The four page letter (with detailed attachments) dated September 7, 1984 (which was apparently written before the two page letter) from the victim McDermott and four other victims, states in part the following:

"It is also our understanding that because these crimes provide the

4

maximum number of points Rattner can be assigned, other charges will not be brought by the State because it would only 'clutter up the Court's calendar' and that 4 years is the maximum sentence that can be given under the States Guidelines".

. . . . . . . . . . .

"Therefore, meeting as a group, the undersigned, all victims of Stephen Rattner, want to express our dissatisfaction with the case as it is now being presented. Namely, we object to the following:

The State is not filing all the charges against Rattner".

In order to explain the Defendant's urgency in trying to wrap up the plea agreement of September 4, 1984, Assistant State Attorney Reich brilliantly argued at the hearing, that Defendant Rattner was "getting such a good deal" under Federal and State pleas, that it did not make any difference to Defendant or his attorney that other charges against the Defendant might be forthcoming. This speculation may be correct, but the victims' letters and the testimony of the two attorneys seem to belie that contention as being the fact on September 4, 1984, the date of the State plea on Rattner's first case.

Finally, the Court must look to the consequences of the agreement under the respective contentions of the parties including the severity of the Federal and State sentence of four years and the punitive consequences to Defendant under the agreement or lack of agreement now urged by the State. The Court concludes that in accordance with existing law as to plea agreements, any doubts, or ambiguities, must be resolved under civil law so as to be just; and under criminal law in favor of the Defendant.

## IV. *The Law*

The touchstone of the applicable law here is *Santobello v. New York*, 404 U.S. 257 (1971) which discusses agreements between an accused and a prosecutor, and that those agreements should be specifically enforced:

"This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (at p. 262)

5

See also *Acosta v. Turner*, 666 F.2d 949, 953 (1982) and *United States v. Owen*, 492 F.2d 1100, 1107 (1974).

The onus of clarity as to a plea agreement falls upon the prosecutor, not the Defendant or the Court:

"We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." (at p. 263 of 404 U.S. 257 (Santobello))

See also *U.S. v. Fields*, 766 F.2d 1161 (1985):

"It is most distasteful to be confronted with conflicting testimony by lawyers with respect to the terms of an agreement which ought to be clear and indisputable in its terms.", *cert. denied*, 461 U.S. 907, 103 S.Ct. 1878, 76 L.Ed. 2d 809 (1983). In sum, we have consistently adhered to the view expressed by the Third Circuit in *United States v. Crusco*, 536 F.2d 21, 26 (3d Cir. 1976):

The Government . . . must also clearly understand the scope and depth of its commitment and the need for precision in plea bargaining. It may reach port in the plea bargaining process but founder there because of careless or loose language in its commitment. Once it makes a promise, Santobello requires strict adherence." (at p. 1168)

Ambiguous agreements are to be resolved against the government. See *U.S. v. Bowler*, 585 F. 2d 851 (1978):

". . . the Government now argues that the language of the agreement only created a unilateral option for the Government in its discretion to recommend or not to recommend a lesser period of incarceration. The Government argues that there was in fact no promise.

We are of the opinion that the very presence of the statement in the written executed plea bargain document to consider the specific mitigating factors shows that there was an implicit promise by the Government that it would consider these factors and would make a recommendation based on this consideration." (at pp. 853-854)

The cases cited by the State are inapposite here. See *State v. Feldman*, 262 So. 2d 481 (CA1 1978). Nor does Fla.R.Crim.P. 3.151 specifically apply. Those citations are not directed to plea agreements, but to the consolidation of related offenses. Indeed, Rule 3.151(d) Fla.R.Crim.P. does not deal with negotiated pleas such as are present in the case at bar.

It is, of course, the law of contracts or agreements, that a Court may

6

look to the interpretation and actions of the parties *after* the agreement, to understand the intention of the parties to the agreement previously made.

> "The Florida Supreme Court has affirmatively recognized that the actions of the parties may be considered as a means of determining the interpretation that they themselves have placed on the contract. Moreover, several other cases have recognized that the court may look to the conduct or actions of the parties to determine the intention of the parties under the contract." 11 Fla Jur 2d Contracts 112 (at p. 408)

> . . . . . . . . . . .

> "As a general rule, it is the duty of the court to determine the intention of the parties from the language used, apparent objects to be accomplished, other provisions in the agreement which might shed light on the question, and the surrounding circumstances at the time the agreement was entered into."

*J & S Coin Operated Machines, Inc. v. Gottlieb*, 363 So 2d 3, 39 (CA3 1978)

The actions and reports by the Assistant in orally informing the victims of the import and coverage of the plea agreement of September 4, 1984, and the victims' immediate reaction thereto in their letters of September 7, 1984 clearly show the intentions of the State on September 4 before Judge Morphonios; namely, that the plea agreement was to include and conclude not only the then pending case, but also the pending related investigation. Any other interpretation on the facts here would be contrary to a prosecutor's role as stated in Ethical Consideration 7-13 of the Florida Code of Professional Responsibility. And, the rules of construction generally applicable to agreements should apply especially to plea agreements:

> "Agreements must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. In the transactions of business life, sanity of end and aim is at least a presumption, though a rebuttable one. A reasonable interpretation will be preferred to one which is unreasonable."

> . . . . . . . . . . .

> "Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be

7

likely to enter into, the interpretation which makes a rational and probable agreement must be preferred. A court will not place an unjust interpretation upon a contract, unless the terms thereof compel it to do so. An agreement will not be interpreted so as to render it oppressive or inequitable as to either party or so as to place one of the parties at the mercy of the other, unless it is clear that such was their intention at the time the agreement was made. An interpretation which is just to both parties will be preferred to one which is unjust."

*James v. Gulf Life Ins. Co.*, 66 So 2d 62, 63 (1953)

## V. *Findings of Fact and Conclusions of Law*

The position advanced by Defendant as to the existence of a plea agreement on September 4, 1984 covering the specific case and the then related pending investigation is well taken. Accordingly, based upon the evidence adduced before the Court the Court finds that:

1. The equities of this matter are with the Defendant and not with the State;

2. Any ambiguities in the plea agreement of September 4, 1984, are to be resolved in favor of the Defendant;

3. A contrary interpretation of that agreement or lack of it would be punitive to the Defendant;

4. The testimony of the Assistant handling the matter is hypothetical, questionable, and contrary to established procedures;

5. The letters of the victims based on the information obtained from the State supports Defendant's version of the coverage of the plea agreement of September 4, 1984;

6. The attorneys for the State and for Defendant understood that one of the inducements for the plea agreement was that the State would terminate the related pending investigation against Defendant, and that the Defendant would not be prosecuted on those charges;

7. The plea agreement in the State Court between Defendant and the State on September 4, 1984 provided that the State sentence was to run concurrent with the federal sentence;

8. The plea agreement of September 4, 1984 and the terms found herein are specifically enforced; the instant Information together with the charges therein (each Count) are hereby dismissed with prejudice; and the Defendant is hereby discharged from any prosecution in this cause; and

9. Defendant is hereby remanded to federal custody to complete

8

Defendant's sentence in his federal case; and thereafter to State custody if additional time remains on the State Court plea, in accordance with Defendant's plea in the State Court on September 4, 1984, all pursuant to this Order.