UNITED STATES of America,

v.

Osman GARBA, Defendant.

No. CRIM. 99–704–3(MLC).

United States District Court,
D. New Jersey.

Sept. 26, 2003.

Christopher J. Christie, United States Attorney (Stephen J. Taylor of counsel), Newark, NJ, for United States of America.

John J. Barry, Lawrenceville, NJ, for Defendant.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motion by defendant Osman Garba ("Garba") pursuant to Federal Rule of Criminal Procedure ("Rule") 11(d)(2)(B) to withdraw his plea of guilty before the imposition of sentence.[1] Garba claims he should be permitted to withdraw his plea because, *inter alia*, it was unfair, unjust, unknowing, and entered in violation of both the Sixth Amendment to the United States Constitution and Rule 11. The United States ("the government") opposes the motion on the grounds that, *inter alia*, Garba fails to produce any fair or just reason justifying withdrawal. Garba's motion will be denied.

## BACKGROUND

Garba emigrated from Ghana to the United States in 1983. (Garba Aff. at ¶ 2.) In 1997, Garba returned to Ghana. (*Id.* at ¶ 4.) A grand jury indicted Garba in August 2000 for, *inter alia*, conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (Gov.2002 Br. at 2.) Garba was arrested and extradited back to the United States in January 2001. (Garba Aff. at ¶ 4–5.)

Garba and the government engaged in intermittent plea negotiations beginning in March 2001. (*Id.* at ¶¶ 5–7; Gov.2002 Br. at 2–4.) The sticking point throughout the negotiations centered around the amount of cocaine that the agreement would stipulate was involved in the conspiracy. Garba wished to stipulate to 5 or more kilograms of cocaine, thereby subjecting him to a base offense level of 32 under the Federal Sentencing Guidelines. (Sent. Tr. at 17.) The government was only amenable to a stipulation to at least 15 but no more than 50 kilograms of cocaine, thereby carrying a base offense level of 34. (*Id.* at 17, 21.) The negotiations stalled.

The parties reached a plea agreement just as Garba's trial was set to commence in March 2002. (Garba Aff. at ¶ 7.) Garba agreed to enter a plea of guilty to conspir-

---

1. Withdrawal of a plea was formerly governed by Rule 32. Both parties refer to Rule 32. However, the Court will treat the motion as pursuant to the new Rule 11(d)(2)(B).

ing to distribute and possess with the intent to distribute more than 5 kilograms of cocaine. (Gov. Sent. Br., Ex. A, at 1.) In exchange for this plea, the government agreed to move to dismiss all other charges pending against Garba. (*Id.*) As part of the plea agreement, the government and Garba "agree[d] to stipulate at sentencing" to certain statements. (*Id.* at 3.) The parties stipulated that "[t]he applicable quantity of powder cocaine is at least 15 but less than 50 kilograms. Accordingly, the base offense level is 34." (*Id.* at 3, 6.)

The Court held a plea hearing pursuant to Rule 11 to determine whether it would accept Garba's plea of guilty on March 11, 2002. The Court inquired whether Garba was "fully satisfied with the advice and representation that [he was] receiving from [his] attorney in this case," Mr. Rhoads ("Rhoads"). (Plea H'g Tr. at 5.) The Court also asked whether Rhoads had "taken the time necessary to discuss the aspects of [the] case with [him], including the considerations that are important when [he] decide[s] whether to plead guilty." (*Id.*) Garba responded "Yes" to both questions. (*Id.*)

The Court then proceeded to review the plea agreement with Garba on the record. (*Id.*) The Court ascertained that Garba had read and discussed the agreement with Rhoads. (*Id.* at 6.) The Court noted that Garba would be entering a plea of guilty to "conspiring to distribute and possess with intent to distribute more than five kilograms of cocaine." (*Id.* at 7.) The Court reiterated to Garba that the plea agreement stated the minimum sentence was ten years, and the maximum was life imprisonment. (*Id.* at 9.) The Court then addressed the stipulations.

THE COURT: Now, there are certain statements that you and the Government have agreed to. . . . These are called "stipulations" and what they mean, what that word means is that you and the Government have agreed that at the time of sentencing you will not be disputing these points that are relevant to sentencing. You may be disputing other points at the sentencing, but you won't be disputing these stipulated points. Understand? These are agreed statements.

MR. GARBA: Yes, Your Honor.

THE COURT: Stipulation just means a statement which is agreed to by both sides. Now, before we go over the stipulations, I do need to point out that under the plea agreement the sentencing Judge is not required to agree with the stipulations at the time of sentencing. So the court is not bound by your stipulations, but you and the Government are. Understand?

MR. GARBA: Yes, Your Honor.

THE COURT: Also, the Court certainly will consider these stipulations and if the Court agrees, the Court will follow them. All right?

MR. GARBA: Yes, Your Honor.

THE COURT: Have you read each of these stipulations and discussed it with your lawyer? They're part of the plea agreement?

MR. GARBA: Yes, Your Honor.

THE COURT: Okay. You have read each of these stipulations and discussed it with your lawyer, right?

MR. GARBA: Yes, Your Honor.

THE COURT: You don't need for me to read these stipulations to you to make sure that you're aware of them, do you?

MR. GARBA: Yes, Your Honor.

THE COURT: So you don't need me to do that?

MR. GARBA: Yes, Your Honor, I don't need to do that. Yes, I don't need you to do that. Yes, Your Honor.

THE COURT: Okay, fine. I've read them. You've read them. We know what they say and you're agreeing to be bound by them.

MR. RHOADS: Your Honor, just I guess for the record, if I—I'm referring to Schedule A and he's looking as he speaks with you.

MR. GARBA: Yeah.

THE COURT: Okay.

MR. RHOADS: So we have gone over it.

(*Id.* at 11–12.) Later, the Court explained to Garba that he had "the right to take a position as to what [his] sentence should be at the time of sentencing," but cautioned: "Except that you've agreed that these stipulations will not be disputed between yourselves, either at the time of sentencing or later. Understand?" (*Id.* at 13–14.) Garba responded: "Yes, Your Honor." (*Id.* at 14.)

The Court next asked the government to question Garba on the record in order to establish a factual basis for the plea. (*Id.* at 24.) During the questioning, Garba conceded multiple times that the drug involved was cocaine, and that his "involvement with this conspiracy involve[d] the exportation of more than five kilograms of cocaine." (*Id.* at 25–29.) The Court accepted Garba's plea. (*Id.* at 31.)

Garba's sentencing hearing was held on June 26, 2002. At that hearing, Garba stated that he had entered a plea of guilty on the understanding that there would be a hearing before his sentencing at which he could contest the amount of cocaine involved. (Sent. Tr. at 18.) Garba said he wanted the chance to argue that the amount involved was under 15 kilograms, thus resulting in a lower base offense level.

(*Id.*) When the Court pointed out that Garba had stipulated that the quantity was between 15 and 50 kilograms, Garba responded that he had believed that stipulation could still be contested before sentencing. (*Id.* at 19–20.) Garba said his attorney had told him he would have this opportunity. (*Id.* at 18.) At that point, the Court discontinued the sentencing and ordered a hearing on whether Garba should be permitted to withdraw his plea of guilty.[2]

Garba moved to withdraw his plea in November 2002. The Court held an evidentiary hearing on December 19, 2002 and May 27, 2003, to determine whether Garba's motion should be granted. On the first hearing date, Garba testified that he thought he could still argue the cocaine amount because Rhoads had assured him the stipulation would not preclude such a claim. (12–19–02 H'g.) He further testified that he had been part of a conspiracy involving at least 5 kilograms of cocaine, but that the amount had been under 15 kilograms. (*Id.*) Garba claimed that he had (1) not read the stipulations, (2) not been paying careful attention to the Court's questions during the plea colloquy, and (3) been just going through the motions. (*Id.*) On the second hearing date, Rhoads testified that he did not tell Garba that he could contest the amount recited in the plea, and that in fact he had carefully explained that the stipulation was binding on both Garba and the government. (5–27–03 H'g.) Rhoads further testified that Garba had admitted to him previously that the conspiracy involved more than 15 kilograms of cocaine. (*Id.*)

## DISCUSSION

■ Garba argues the Court should grant his motion under Rule 11(d)(2)(B)

---

2. Rhoads was relieved as Garba's counsel in order to permit him to testify at the withdraw- al hearing. (Sent. Tr. at 25.)

because (1) his plea was given under the mistaken belief that he would be able to contest the amount of cocaine involved at a hearing before the sentencing; (2) his plea was the result of ineffective assistance of counsel in violation of the Sixth Amendment; and (3) the plea hearing conducted by the Court violated Rule 11 because Garba was not made aware that at trial the government would have to prove the quantity of cocaine involved to the jury beyond a reasonable doubt. Rule 11(d)(2)(B) states:

> A defendant may withdraw a plea of guilty ... after the court accepts the plea, but before it imposes sentence if ... the defendant can show a fair and just reason for requesting the withdrawal.

This rule makes clear that "there is no absolute right to withdraw a guilty plea," but rather that "acceptance of the motion is within the discretion of the trial court." *Gov't of V.I. v. Berry*, 631 F.2d 214, 219 (3d Cir.1980).

■ The Third Circuit has elucidated a three-pronged inquiry for assessing whether a defendant's reasons for withdrawal are fair and just: "A district court must consider ... (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir.2003). While "[t]he burden of demonstrating a 'fair and just' reason falls on the defendant, and that burden is substantial," *id.*, a defendant's request to withdraw a plea "before sentencing should be construed liberally in favor of the accused." *United States v.*

*Stayton*, 408 F.2d 559, 560 (3d Cir.1969) (quotations omitted).

## I. *Assertions of Innocence*

■ The first factor under Rule 11(d)(2)(B) is whether the defendant asserts his innocence. While "[i]t is not necessary for a defendant to allege that he is innocent of the crime charged ... the failure of a defendant to protest his innocence ... may be an important factor...." *Id.* at 561 n. 5. And even if he does allege his innocence, the defendant must support his assertion with "facts in the record that support a claimed defense" and "give sufficient reasons to explain why contradictory positions were taken" during his plea. *United States v. Brown*, 250 F.3d 811, 818 (3d Cir.2001) (citations and quotations omitted). "Bald assertions of innocence ... are insufficient to permit a defendant to withdraw [a] guilty plea." *Id.*

■ Garba does not appear to have claimed innocence. He has contested neither that he was part of the conspiracy the government alleges, nor that the conspiracy involved at least 5 kilograms of cocaine. Garba's affidavit in support of his motion states that he wanted to make the government "prove the amount of the narcotics," but this contention is a far cry from a protestation of innocence. (Garba Aff. at ¶ 6.) Even were the Court to construe Garba's desire to force the government to prove drug quantity as an assertion of some degree of innocence, Garba still fails to point to any facts in the record to support his allegation. Any claim of innocence is further undermined by Rhoads's testimony that Garba had told him that there were more than 15 kilograms of cocaine involved in the conspiracy.[3] (5–27–03 H'g.) Thus, the Court finds that

---

**3.** Rhoads's testimony on this issue may properly be considered by the Court, as Garba waived the attorney-client privilege when he

asserted that his plea was the result of ineffective assistance of counsel. (5–27–03 H'g.)

Garba has not made a colorable claim of innocence to support his motion.

## II. *Strength of Reasons for Withdrawing*

Garba's failure to properly assert his innocence is not fatal to his motion. *See Stayton*, 408 F.2d at 561 n. 5. If any of his reasons for withdrawal are sufficiently weighty, the Court may still grant his motion. Garba asserts three such reasons.

### a. *Mistaken Belief*

■ Garba claims he pleaded guilty only because he was misled to believe that even after doing so "a hearing would be held by the court to require the Government to prove its contentions that the amount of cocaine involved was 15 kilograms or more." (Mot. to Withdraw Plea at 1.) A mistaken belief regarding the effect of a plea agreement is a permissible basis for withdrawing the plea, provided that the defendant's mistake is reasonable. An unreasonable misapprehension is insufficient. In *United States v. Crusco*, 536 F.2d 21 (3d Cir.1976), the Third Circuit held that a defendant who was mistaken about the effect of his plea of guilty was entitled to withdraw that plea "[w]here the record shows that circumstances as they existed at the time of the guilty plea, judged by objective standards, reasonably justified his mistaken impression." *Id.* at 24. *See also United States v. Cucciniello*, No. 89–206, 1990 WL 119317, at *5 (D.N.J. Aug. 9 1990) (allowing withdrawal of plea of guilty where defendant was reasonably mistaken about meaning of term in plea agreement); *United States v. Trott*, 604 F.Supp. 1045, 1054 (D.Del.1985) (denying motion to withdraw plea where "there is no basis in fact for [his] allegations that he did not understand the nature of the plea agreement").[4]

■ The Court, assuming *arguendo* that Garba was genuinely mistaken about the effect of the stipulations, finds this mistake unreasonable. The language of the plea agreement is so unambiguous that no reasonable person reading it could miss its significance. In the plea agreement, which is only six pages long, Garba unmistakably stipulates that the amount of cocaine involved was between 15 and 50 kilograms. (Gov. Sent. Br., Ex. A, at 6.) The agreement states that the government and Garba will still be able to litigate the extent of his role in the offense before sentencing. (*Id.*) No corresponding provision exists regarding the drug amount. The plea agreement also states that "[t]he parties have not reached an agreement on any other issue related to sentencing. Each party reserves the right to litigate any other issue." (*Id.*) The clear meaning of this contractual language is that the few issues to which the parties did stipulate could not be litigated later.

The plea hearing further reinforced the plain meaning of the plea agreement. The Court reviewed the plea agreement with Garba, and Garba told the Court that he: (1) had read and understood the stipulations; (2) understood that he was bound by the stipulations; and (3) knew he would not be able to dispute the stipulations once the plea was entered. (Plea H'g Tr. at 11–14.) Indeed, at the hearing on the motion, Garba testified that he understood the language in the stipulation that gave him the right to dispute the extent of his role in

---

**4.** The rule that only reasonable mistakes justify a withdrawal of a guilty plea is imposed by other Circuits as well. *See, e.g., United States v. Doyle*, 981 F.2d 591, 596 (1st Cir.1992) ("[T]o invalidate a guilty plea, a defendant's misimpression must, at the very least, be ... objectively reasonable."); *United States v. Roberts*, 570 F.2d 999, 1008 (D.C.Cir.1977) ("Courts have been reluctant to allow withdrawal of guilty pleas on allegations of misunderstanding resulting from a defendant's purely 'subjective' beliefs.").

the conspiracy. (12–19–02 H'g.) Garba testified that he listened to the Court's explanation of the plea agreement, and understood. (*Id.*) Given these facts, no reasonable person could have been mistaken as to the effect of the stipulations. Garba is not entitled to withdraw his plea based on this unreasonable mistake.

**b.** *Ineffective Assistance of Counsel*

■ Garba asserts that "the advice of his then attorney ... misled him" regarding the effect of the stipulation in the plea agreement. (Mot. to Withdraw Plea at 1.) We construe this as a claim that his plea was a result of ineffective assistance of counsel in violation of the Sixth Amendment. Proof that a plea is the result of ineffective assistance of counsel is a strong reason justifying withdrawal. *See Jones,* 336 F.3d at 253 ("A court will permit a defendant to withdraw a guilty plea based on ineffective assistance of counsel.").

■ The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to " 'reasonably effective assistance' of counsel." *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In cases where the defendant moves to withdraw a plea of guilty:

> A court will permit a defendant to withdraw a guilty plea based on ineffective assistance of counsel only if (1) the defendant shows that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms, and (2) the defendant shows that he suffered sufficient prejudice from his counsel's errors.

*Jones,* 336 F.3d at 253–54 (citations and quotations omitted).

The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052. There is a strong presumption that counsel has rendered adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment. *Id.* at 689, 104 S.Ct. 2052; *see also Buehl v. Vaughn,* 166 F.3d 163, 169 (3d Cir.1999); *Reese v. Fulcomer,* 946 F.2d 247, 256–57 (3d Cir.1991); *United States v. Gray,* 878 F.2d 702, 710 (3d Cir. 1989). The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

■ The second prong of the *Strickland* test requires the defendant to show that counsel's deficient performance prejudiced the defense. The defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. When attacking the validity of a plea in particular, the defendant must show that, but for counsel's deficient performance, there is a reasonable probability that he would not have pleaded guilty, but would have insisted on going to trial. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

The Court finds that Rhoads rendered reasonably effective assistance. Garba claims Rhoads performed deficiently because Rhoads told him that he was not bound by the stipulations in the plea agreement, and that he would have an opportunity to prove that the conspiracy involved under 15 kilograms of cocaine. (12–19–02 H'g; Mot. to Withdraw Plea at 1; Garba Aff. at ¶ 7.) Garba claims Rhoads gave him this information in a private conversation the two of them had in the basement of the courthouse just before Garba entered his plea of guilty. (*Id.*) Garba claims he agreed to enter his plea because Rhoads told him that he could contest the drug amount before sentencing. (*Id.*) By contrast, Rhoads testified that he told Garba he would be bound by the stipulations in the plea agreement, and that Garba understood that he would be bound. (5–27–03 H'g.) Rhoads further testified that he never told Garba he would have a chance to argue at a later hearing that the amount of cocaine was under 15 kilograms. (*Id.*) In addition, the Court notes that Garba stated in his plea colloquy that he understood he was bound by the stipulations in the plea agreement, and knew he could not later contest them. (Plea H'g Tr. at 11–12.)

 The Court, based on the plea colloquy and the hearing on Garba's motion, finds Rhoads's version of what transpired more credible. As an experienced federal public defense attorney, Rhoads was thoroughly familiar with the effect that stipulations have on sentencing. The notion that he would misrepresent that effect to his client, especially when he knew full well that the Court would explain to Garba that stipulations are binding and cannot later be disputed, is dubious at best. That Gar-

ba did not make this claim until the day of his sentencing, after having previously told the Court he fully understood the binding effect of his stipulations, further strains the limits of credibility.

The Court is bound to recognize the strong presumption that counsel has rendered adequate assistance. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. In this case we have not only this presumption to guide the Court, but also a full evidentiary record that refutes Garba's contentions. In sum, the Court finds no evidence of ineffective assistance of counsel by Rhoads. Garba's motion to withdraw his plea will not be granted on this basis.[5]

### c. *Rule 11 Violation*

 Garba asserts that the plea colloquy did not conform to the stringent requirements of Rule 11. Specifically, Garba complains of the Court's failure to instruct him that at trial a jury would have to determine drug quantity beyond a reasonable doubt. Rule 11 establishes the procedures for the acceptance of a plea of guilty. The rule requires, *inter alia,* that the Court ensure that the defendant understands "the nature of each charge to which the defendant is pleading." Fed. R.Crim.P. 11(b)(1)(G). While "the elements of the offense need not be recited in any ritualistic fashion," the Court does need to make certain that the defendant understands all that the government needs to prove to a jury beyond a reasonable doubt in order to convict him of the offense charged. *United States v. Cefaratti,* 221 F.3d 502, 508 (3d Cir.2000) (quotations omitted). Failure to comply with Rule 11 "requires that the defendant's guilty plea be set aside." *United States v. Cannistraro,* 734 F.Supp. 1110, 1133 (D.N.J.1990).

---

**5.** Since the Court finds no evidence supporting the first prong of the ineffective assistance inquiry, there is no need to consider the second prong, prejudice. *Stevens v. Del. Corr. Ctr.,* 295 F.3d 361, 374 n. 4 (3d Cir.2002).

However, Rule 11 violations are subject to a harmless error limitation: if the district court's "variance from the requirements of this rule ... does not affect substantial rights," then the defendant should not be permitted to withdraw his plea. Fed. R.Crim.P. 11(h).

Garba pleaded guilty to a violation of § 846, which imposes criminal liability on those who conspire to commit one of a number of crimes. The conspiracy at issue here was the conspiracy to violate 21 U.S.C. § 841(a)(1), knowingly or intentionally distributing and possessing with the intent to distribute a controlled substance. The statutory elements of a § 841(a)(1) violation were recited to Garba at the plea hearing:

> One, that the defendant, yourself, intentionally delivered or aided the delivery of narcotics to another person. Two, that at the time of the delivery you knew the substance that was to be transferred was a narcotic drug. And three, that you acted knowingly and intentionally.

(Plea H'g Tr. at 23.) Garba was also told the government would have to prove to the jury beyond a reasonable doubt that these elements were the object of the conspiracy. (*Id.* at 17.) It is undisputed that these three elements are all the government needs to show in order to prove the unlawful object of a § 846 conspiracy.

Garba alleges, however, that there is another, nonstatutory element to the unlawful objective of the § 846 conspiracy. Though it is not listed as an element under § 841(a)(1), Garba contends the Court was required by the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) to inform him of the government's obligation to prove drug amount beyond a reasonable doubt. Failure to do so, Garba argues, mandates that the Court grant his Rule 11(d)(2)(B) motion.

In *Apprendi*, the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. In *United States v. Minore*, 292 F.3d 1109 (9th Cir.2002), the Ninth Circuit interpreted *Apprendi* to modify a judge's responsibility under Rule 11. The court reasoned that since "[d]ue process requires that the defendant be informed of the 'critical' elements of the offense," and in some instances the quantity of drug involved can expose a defendant to a higher statutory maximum sentence, then "the district court must advise the defendant that the government would have to prove drug quantity as it would prove any element-to the jury beyond a reasonable doubt." *Id.* at 1115, 1117. Citing *Minore*, Garba claims the Court's failure to advise him that the government would have to prove drug quantity to a jury violated Rule 11, and is thus grounds for granting his motion to withdraw his plea.

 The Court, assuming *arguendo* that failure to tell Garba that a jury would have to determine the amount of cocaine involved was error, finds the error to be harmless.[6] The Court first notes that Garba's contention that the Court

---

**6.** The Third Circuit has not yet held that *Apprendi* requires the trial court to instruct the defendant at the plea hearing that the government must prove drug quantity to a jury beyond a reasonable doubt in cases where drug quantity would affect the statutory maximum sentence. In two recent unpublished opinions, however, it has intimated that this is the case. *See United States v. Wesley*, 55 Fed. Appx. 47, 49 n. *, 2002 WL 31953505 (3d Cir.2002); *United States v. Sosa–Rodriguez*, 29 Fed.Appx. 815, 817, 2002 WL 181347 (3d Cir.2002).

was required to inform him that a jury would have had to have found the drug quantity to be between 15 and 50 kilograms, rather than 5 kilograms, is incorrect. Per *Apprendi*, juries only have to find facts that would increase the statutory maximum sentence to which the defendant would be exposed. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. The statutory maximum sentence for the crime to which Garba pleaded guilty, conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of cocaine, is life in prison. 21 U.S.C. §§ 846, 841(b)(1)(A). A finding that the amount of cocaine involved was no less than 15 but no greater 50 kilograms would not increase the maximum potential sentence; it would only affect the sentencing range under the Federal Sentencing Guidelines, U.S.S.G. §§ 2D1.1(a)(3), (c)(3), with which *Apprendi* is not concerned. *Apprendi*, 530 U.S. at 497 n. 21, 120 S.Ct. 2348. Thus, assuming that *Apprendi* modifies the requirements of a plea colloquy, the only instruction required in these circumstances is that a jury would have to determine, beyond a reasonable doubt, that the conspiracy involved at least 5 kilograms of cocaine.

Rule 11 violations, as stated *supra*, do not automatically entitle a defendant to withdraw his plea. If the violation did not affect the defendant's substantial rights, the error is harmless, and Garba's motion should be denied. Fed.R.Crim.P. 11(h); *United States v. Mustafa*, 238 F.3d 485, 490–91 (3d Cir.2001) (denying defendant's motion to withdraw plea on grounds of Rule 11 violation because such violation was harmless error). The Third Circuit recently set out the standard for a Rule 11(h) harmless error inquiry:

> This is a subjective, highly individualized test. We must focus on the defendant's ability to tender a knowing and intelligent waiver of constitutional rights given the misinformation he or she received.... [A]n error will be regarded as harmless under Rule 11(h) only if the government can establish that the error is unlikely to have affected a defendant's willingness to waive his or her rights and enter a plea of guilty.

*United States v. Powell*, 269 F.3d 175, 185 (3d Cir.2001).

Garba cannot claim that the Court's failure to inform him that at trial the government would have to prove to the jury that the conspiracy involved more than 5 kilograms of cocaine "affected [his] willingness to ... enter a plea of guilty." *Id.* First, Garba's primary complaint is that he was not told the government would have to prove beyond a reasonable doubt that the amount was between 15 and 50 kilograms. As discussed *supra*, however, the government would have no such burden: because any increase in quantity beyond 5 kilograms would not affect the statutory maximum sentence, *Apprendi* does not require that the jury find such a fact. *See United States v. Henry*, 282 F.3d 242 (3d Cir.2002) (holding that *Apprendi* requires jury to decide drug quantity where quantity affects statutory maximum sentence). Second, while Garba testified at the December 2002 hearing that he would not have pleaded guilty had he known of the government's burden to prove drug amount at trial, his claim is not credible. (12–19–02 H'g.) Garba has admitted throughout that the conspiracy involved greater than 5 kilograms of cocaine. (Plea H'g Tr. at 29; Sent. Tr. at 17; 12–19–02 H'g.) His only point of contention has been that the conspiracy did not involve 15 or more kilograms of the drug. (Garba 2002 Br., at 1; 3–27–03 Barry Letter, at 3.) Accordingly, Garba cannot show that his substantial rights were harmed by the Court's omission in this case. The Court cannot credit Garba's assertion that he would have de-

cided not to enter a plea of guilty upon learning the government had to prove beyond a reasonable doubt that which he himself had conceded from the first.

### III. *Prejudice to the Government*

██ Since the Court has found that Garba has neither asserted his innocence nor advanced any strong reasons for withdrawal, we need not discuss the issue of prejudice. "[T]he Government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a plea." *United States v. Martinez,* 785 F.2d 111, 116 (3d Cir.1986) (quotations omitted). *See also United States v. Harris,* 44 F.3d 1206, 1210 (3d Cir.1995); *United States v. Blount,* 940 F.Supp. 720, 733 (E.D.Pa. 1996).

### *CONCLUSION*

Garba moves to withdraw a plea of guilty he made voluntarily before the Court, with full knowledge of what it meant to waive his right to a trial. Garba has not asserted his innocence of the crime to which he admitted guilt in open court. Nor has he forwarded any strong reasons to support his motion. While criminal defendants should be permitted to withdraw their pleas before sentencing in some cases, this action is not one of them. Therefore, the Court will deny the motion. An appropriate order will accompany this memorandum opinion.