

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-27-1995

# USA v Cleary

Precedential or Non-Precedential:

Docket 94-3290

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"USA v Cleary" (1995). *1995 Decisions.* Paper 26.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/26

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-3290


UNITED STATES OF AMERICA,

v.

THOMAS J. CLEARY,

THOMAS JAMES CLEARY,

Appellant


Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 82-cr-00133)


Submitted Under Third Circuit LAR 34.1(a)
September 9, 1994

Before:  BECKER, COWEN AND ROTH,
<u>Circuit Judges</u>

(Opinion filed January 27, 1995)


Frederick W. Thieman
United States Attorney
Michael L. Ivory
Assistant United States Attorney
633 United States Post Office & Courthouse
Pittsburgh, PA   15219
          Attorney for Appellee

Thomas James Cleary, #01475-068
San Diego M.C.C.
808 Union Street
San Diego, CA   92101
          Appellant, <u>Pro</u> <u>Se</u>

OPINION OF THE COURT

ROTH, Circuit Judge:

## I. **INTRODUCTION**

Thomas James Cleary ("Cleary") appeals from an order of the district court entered on May 24, 1994, denying Cleary's motion to vacate or correct an illegal sentence pursuant to 28 U.S.C. § 2255. Cleary asserts that the district court violated Rule 11(c)(1) of the Federal Rules of Criminal Procedure by failing, at his change of plea hearing, to adequately inform him and determine that he understood the maximum penalty he could receive. In particular, Cleary contends that the court erred by failing to explain the effects of a term of special parole. Because of the court's alleged error, Cleary seeks a reduction of his special parole term from ten years to two, or, in the alternative, a vacatur of his guilty plea. For the reasons stated herein, we find that the district court's error did not rise to the level required to permit collateral relief under section 2255.

## II. **BACKGROUND AND FACTS**

On September 8, 1982, a grand jury sitting in the Western District of Pennsylvania returned a two count indictment against Cleary, charging him with: (1) Count One – conspiracy to

violate federal narcotics laws in violation of 21 U.S.C. § 846; and (2) Count Two – manufacturing and distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On December 7, 1982, pursuant to an oral plea agreement, Cleary pled guilty to Count Two of the indictment. In exchange, the Government agreed to dismiss Count One of the indictment. On January 10, 1983, the district court judge sentenced Cleary to three years imprisonment to be followed by a special parole term of ten years on Count Two. Count One was dismissed. Cleary appealed his sentence, but because he became a fugitive pending appeal, this Court dismissed his appeal. See United States v. Cleary, No. 83-5044 (3d Cir. June 6, 1983).

On June 24, 1985, Cleary filed his first habeas motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Acting pro se, Cleary advanced several arguments in support of his motion, including: (1) the presentence investigation report was factually inaccurate;[1] (2) the government illegally searched his car without a warrant and illegally seized money therefrom; (3) the prosecution withheld information favorable to the defense; and (4) the district court denied him the opportunity to present evidence on his behalf.

---

1  Specifically, Cleary claimed that the presentence investigation report erroneously stated that he had filed for bankruptcy, when he did no such thing; that he had loaned his father $12,000, when in actuality his father had loaned him that amount of money; and that he had 35,750 dosage units of methamphetamine, when he really had only 2,405 dosage units.

The court appointed counsel for Cleary and, with the assistance of that counsel, Cleary amended his habeas motion to allege that the district court had violated Federal Rule of Criminal Procedure 32 by failing to: (1) determine whether or not the defendant and his counsel had an opportunity to read and discuss the presentence report; (2) afford counsel an opportunity to speak on behalf of the defendant prior to the imposition of sentence; and (3) address the defendant personally and ask him if he wished to make a statement on his own behalf and present information in mitigation of punishment.

By order dated January 17, 1986, the district court denied Cleary's motion. Cleary appealed, and on August 19, 1986, this Court affirmed the decision of the district court. See United States v. Cleary, Nos. 86-3083 and 86-3097 (3d Cir. August 19, 1986). Cleary subsequently petitioned the United States Supreme Court for a writ of certiorari, which was denied on November 3, 1986.

Cleary was released from prison on February 2, 1987, after serving his original three year sentence plus an additional year on an escape charge. He began serving his special parole term on January 14, 1989, after finishing a term of regular parole, and was to remain on special parole for ten years, until January 13, 1999. Supplemental Appendix ("S. App.") 9. However, on April 15, 1993, the United States Parole Commission ("Parole Commission") revoked Cleary's special parole term because Cleary,

while on special parole, had been indicted for:  (1) conspiracy to manufacture methamphetamine; (2) possession of methamphetamine for sale; and (3) manufacture of methamphetamine.  S. App. 2.  In addition, Cleary had been charged with reckless driving and associating with a person engaged in criminal activity.  Id.  The Parole Commission directed that Cleary was to be imprisoned until the expiration of his ten-year special parole term without credit for the time that he had already spent on special parole.  Id.  Cleary appealed the decision of the Parole Commission.  The Commission, however, affirmed its prior decision.

On January 12, 1994, Cleary filed the present motion to correct or vacate his sentence pursuant to 28 U.S.C. § 2255.  In this motion, Cleary asserts that his sentence is illegal and should be reduced or vacated because at his change of plea hearing the district court failed to properly explain to him the effects of special parole as required by Federal Rule of Criminal Procedure 11(c)(1).  The following exchange, at Cleary's change of plea hearing on December 7, 1982, is central to his present allegations:

> ASSISTANT UNITED STATES ATTORNEY ("AUSA"):  . . .  The penalty is five years and/or $15,000, with a special parole term of two years.
>
> COURT:  All right.  Now, that means by entering this guilty plea you could be sentenced to prison for up to five years and/or fined up to $15,000.  And if the Judge decides that you are to go to jail for any period of time, he must also place you on special parole for a minimum of two years and for whatever maximum period the Judge believes to be appropriate.  That means if I decide to send you to jail for any period of time, when you are released from that institution you will be on a

special parole term of at least two years and for whatever maximum I think is appropriate. And you will be supervised by people such as this man seated in the jury box who works for the Probation Office, and you will be required to adhere to certain rather stringent requirements: That is, to stay out of difficulty with the law; your right to own a weapon is abrogated without permission otherwise; and certain reporting requirements to a probation officer. Do you understand that?

CLEARY: Yes, I do.

App. 16.

In particular, Cleary alleges that the AUSA's statement regarding the penalty misled Cleary into believing that "the special parole term was <u>with</u> the five (5) year penalty." Cleary's Opening Brief at 5. We interpret Cleary's argument to mean that he believed that the special parole term was included <u>within</u>, the five year maximum length of imprisonment. Cleary further asserts that the district court's statements after the AUSA's comment did not dispel his mistaken belief. In addition, Cleary claims that the district court failed to explain that: his special parole term would begin only after he had finished his regular parole and that he could end up serving more than the five-year maximum sentence revealed to him at his change of plea hearing because, if he were to violate his special parole, he could be imprisoned for the entire length of the special parole term, without any credit for the time he had already spent on special parole.

After receiving the government's response to Cleary's motion, the district court, on March 31, 1994, denied that motion

without explanation. Cleary filed additional documents with the district court in support of his motion, including: (1) an affidavit stating that he would not have pled guilty if he had been adequately instructed on the nature and possible consequences of special parole, on April 14, 1994 (App. 9-10); (2) a supplemental memorandum, on April 18, 1994; (3) a motion for reconsideration, on May 6, 1994; and (4) an addendum to the motion for reconsideration, on May 24, 1994.

On May 24, 1994, the district court denied Cleary's motion to reconsider, finding that: "(1) the court explained the provisions of special parole in complete and adequate terms during the guilty plea colloquy; (2) the contentions of petitioner are foreclosed by the holding of United States v. Timmreck, 441 U.S. 780 (1979); and (3) the petitioner has failed to exhaust administrative remedies." Appendix ("App.") 2 (citation omitted). Cleary filed the instant appeal on May 29, 1994.

## III. **JURISDICTION AND STANDARD OF REVIEW**

The district court had jurisdiction under 28 U.S.C. § 2255. We have jurisdiction under 28 U.S.C. § 2255 and 28 U.S.C. § 1291. The decision whether to grant or deny a habeas corpus petition is reviewed de novo. See United States v. DeLuca, 889 F.2d 503, 505-508 (3d Cir. 1989).

## IV. **DISCUSSION**

Rule 11(c) of the Federal Rules of Criminal Procedure requires that before a district court may accept a guilty plea, the court must "inform the defendant of, and determine that the defendant understands," a laundry list of information regarding the defendant's rights and the consequences of his or her plea. Fed. R. Crim. P. 11(c). In particular, Rule 11(c)(1) requires the court to inform the defendant of, and make sure he or she understands, "the maximum possible penalty provided by law, including the effect of any special parole or supervised release term."[2] The Notes of the Advisory Committee on Rules regarding the 1982 amendment of Rule 11(c)(1) recommends that a judge inform the defendant, and determine that he or she understands, the four following items in a case involving special parole or supervised release:

> (1) that a special parole term will be added to any prison sentence he [or she] receives;
> (2) the minimum length of the special parole term that must be imposed and the absence of a statutory maximum;
> (3) that special parole is entirely different from -- and in addition to -- ordinary parole; and
> (4) that if the special parole is violated, the defendant can be returned to prison for the remainder of his [or her] sentence and the full length of his [or her] special parole term.

---

[2] At the time of Cleary's guilty plea, Rule 11(c)(1) required the court to advise the defendant of "the effect of any special parole term." The Rule was subsequently amended in 1989 to include supervised release.

1982 Amendment Advisory Committee Note, Fed. R. Crim. P. 11(c)(1) (quoting Moore v. United States, 592 F.2d 753, 755 (4th Cir. 1979)).

In the present case, Cleary asserts that the court presiding over his change of plea hearing violated Rule 11(c)(1). We agree in that the district court failed to explain to Cleary the effects of special parole, including the consequences of a violation, and that special parole is different from and in addition to regular parole. United States v. Baylin, 696 F.2d 1030, 1037 n.18 (3d Cir. 1982) ("Rule 11 explicitly requires that courts explain any `special parole' consequences . . . because they are cumulative to any prison term imposed, and therefore effectively expand the maximum possible sentence for the offense."); see also United States v. Osment, 13 F.3d 1240, 1242 (8th Cir. 1994); United States v. Tuangmaneeratmun, 925 F.2d 797, 803 (5th Cir. 1991).

Because the district court violated Rule 11 in failing to make an adequate explanation, we must determine whether this violation rises to a level that would justify a collateral attack on the judgment of conviction. It is well established that "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."[3] United States

---

[3] Accordingly, the cases cited by the parties regarding relief for Rule 11 violations on direct appeal, while instructive as to what constitutes a Rule 11 violation, are not on point regarding whether habeas relief for such a violation is appropriate.

v. Frady, 456 U.S. 152, 165 (1982).  Because of the great interest in finality of judgments, an error which may "justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  United States v. Addonizio, 442 U.S. 178, 184 (1979); Frady, 456 U.S. at 164. Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas."  Timmreck, 441 U.S. at 784 (footnote omitted).  This is because "'the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.'" Id. (quoting United States v. Smith, 440 F.2d 521, 528-29 (7th Cir. 1971) (Stevens, J., dissenting)).

To be entitled to habeas corpus relief under section 2255, Cleary must show that the Rule 11 error amounted to "a fundamental defect which inherently result[ed] in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."  United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990).  Not only must Cleary demonstrate an error of constitutional magnitude, but he also must show that he was prejudiced by that error, i.e., that he did not understand the consequences of his plea or that, if he had been properly advised about the effect of special parole, he would not have pled guilty.  See Lucas v. United States, 963 F.2d 8, 13 (2d Cir.),

cert. denied, 113 S. Ct. 270 (1992). We find that the district court's Rule 11 violation did not rise to that level.

In United States v. Timmreck, the Supreme Court made it clear that "'collateral relief is not available when all that is shown is a failure to comply with the formal requirements of'" Rule 11. Id. at 785 (quoting Hill v. United States, 368 U.S. 424, 429 (1962)). This Court, in United States v. DeLuca, 889 F.2d at 507, went beyond Timmreck to hold that "a petitioner who has been advised of the possibility of a given sentence but receives instead a sentence of equal or less time in which special parole time is substituted for prison time has not alleged a fundamental defect resulting in a complete miscarriage of justice as is required to sustain a habeas action."[4]

The most factually similar case to the present case, however, is the Second Circuit's Lucas, 963 F.2d 8. In Lucas, the defendant, Lucas, brought a section 2255 habeas motion to have his judgment of conviction vacated, based on the district court's failure to inform him of the maximum possible penalty during his guilty plea. Although the court had advised Lucas of

_____

[4] This case is distinguishable from DeLuca in one extremely important respect: the district court advised Cleary that he faced a mandatory term of special parole whereas the district court in DeLuca completely failed to mention the possibility of a term of special parole. Indeed, in the present case the district court advised Cleary that the special parole term would be in addition to his term of imprisonment and could range from a minimum of two years to "whatever maximum" the court deemed appropriate. Thus, we are not faced with a total failure to advise of a special parole term, as in DeLuca.

a five-year maximum term of imprisonment, it failed to explain that Lucas was also subject to a $15,000 fine and a mandatory two-year term of special parole. At sentencing, Lucas received four years of imprisonment, a two-year term of special parole, and a fine of $10,000. Id. at 10. In his habeas motion, Lucas asserted that he would not have pled guilty if he had been properly advised about the maximum possible penalty. The district court found that Lucas had suffered a constitutional violation entitling him to collateral relief. Instead of vacating his conviction, however, the court excised the parts of Lucas' sentence which offended Rule 11 -- the special parole term and the fine. Both Lucas and the Government appealed.

The Second Circuit found that the district court had violated Rule 11(c)(1) by failing to fully advise Lucas, at his change of plea hearing, of the maximum possible penalty for the crime of conviction. However, it determined that Lucas should not be granted collateral relief:

> because he acknowledged that he had reviewed the presentence report before sentencing, a report that contained the maximum penalties he faced, including the fine and special parole term; because he failed to object to the sentence; because he failed to attempt to withdraw his plea at sentencing, even when invited by the judge to speak; because he failed to pursue a direct appeal on the issue; because he failed to raise the issue in timely motions and because he failed to demonstrate any other prejudice.

Id. at 15; see also United States v. Carey, 884 F.2d 547, 549 (11th Cir. 1989) (court's failure to advise defendant of mandatory term of supervised release at guilty plea was harmless

error where defendant was informed of supervised release in presentence report and at sentencing and neither defendant nor his counsel objected), cert. denied, 494 U.S. 1067 (1990).

As in Lucas, Cleary is not entitled to collateral relief because the record supports the conclusion that Cleary was not prejudiced by the court's failure to explain the effects of special parole and that no manifest injustice or unfair procedure occurred here. At the change of plea hearing, the district court instructed Cleary that:

> [B]y entering this guilty plea you could be sentenced to prison for up to five years and/or fined up to $15,000. And if the Judge decides that you are to go to jail for any period of time, he must also place you on special parole for a minimum of two years and for whatever maximum period the Judge believes to be appropriate. That means if I decide to send you to jail for any period of time, when you are released from that institution you will be on a special parole term of at least two years and for whatever maximum I think is appropriate.

App. 16 (emphasis added). We think that these instructions are sufficient to advise a reasonable person that Cleary's special parole term would begin only after he successfully completed his prison sentence of up to five years, and that the term of special parole could be imposed in excess of the statutory maximum term of imprisonment for the offense (five years in his case). We also note that Cleary stated that he understood the penalties explained by the court and did not ask any questions or make any statements that would lead us to believe that he did not fully

understand the consequences of his guilty plea.[5]  Furthermore, at the end of the colloquy, the court asked all of the parties whether it had overlooked anything.  Tr. 53, 56.  Cleary did not ask about special parole or its effects, and neither he nor his attorney brought up the court's failure to advise Cleary about the effects of special parole.  This is significant because, as the transcripts of the change of plea and sentencing hearings show, Cleary was not hesitant to voice his opinions and concerns to the court.

Additionally, as in <u>Lucas</u>, the fact that Cleary was subject to a mandatory period of special parole for a minimum of two years was also stated in the presentence report.  Although Cleary objected to presentence report in several respects, he did not complain about the term of special parole or raise any questions as to its effect.  Furthermore, neither Cleary nor his attorney objected to the ten-year special parole term at his sentencing.  In fact, his attorney requested that Cleary "be placed on a period of probation for the maximum period of time as well as the maximum [special] parole period after that.  Or in lieu thereof, to do a minimum amount of incarceration and thereafter do the complete balance of the term on probation and then the mandatory parole . . . ."  Sentencing Hearing Transcript

---

[5]  Cleary was represented by competent counsel at his change of plea hearing and Cleary's intelligence and education -- he completed three years of college -- are more than established by the lucid, cogent arguments he has presented to this Court and the court below in his briefs.

("S. Tr.") 115.  Indeed, after rendering Cleary's sentence, the court advised Cleary that the ten years of special parole would "be of no moment" if he stayed out of trouble with the law, but warned him that he would be sent back to jail if he committed another criminal act while on special parole.  S. App. 1. Despite the comments of the court and his attorney and an opportunity to address the court at his sentencing, S. Tr. 118 and 122, Cleary did not protest the term of special parole or its effect.

Cleary also failed to challenge the district court's Rule 11 violation in his first habeas corpus motion.  In fact, Cleary raised the special parole issue for the first time only after the Parole Commission revoked his special parole status, more than twelve years after he was sentenced.  Even then, he waited several months before submitting his self-serving affidavit stating that he would not have pled guilty if he had known about the effects of special parole.  In light of the record and Cleary's failure to take action with respect to this claim, his affidavit is unconvincing.  Thus, he cannot show that he was prejudiced by the court's violation.  Moreover, we cannot find that the district court's error resulted in a fundamental defect which resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.

## V.  **CONCLUSION**

Accordingly, the district court's denial of Cleary's motion to vacate his guilty plea is affirmed.