**UNITED STATES of America,**

v.

**Tanya M. WESLEY, Appellant.**

No. 01–4349.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR
34.1(a) Nov. 19, 2002.

Decided Dec. 10, 2002.

Before BARRY, AMBRO, Circuit Judges, and ACKERMAN,* District Judge.

OPINION

BARRY, Circuit Judge.

Tanya M. Wesley appeals the denial of her motion to withdraw her guilty plea. She argues that that motion should have been granted because (1) she is actually innocent; (2) for a variety of reasons, the plea colloquy was defective; and (3) her counsel was ineffective. We have jurisdiction pursuant to 28 U.S.C § 1291 and will affirm.

Ms. Wesley was indicted for conspiring with her son, Robert L. Wesley, and with Sedric A. Morris to distribute in excess of 50 grams of crack cocaine. She entered into a plea agreement and pled guilty to an information charging her with acting as an accessory after the fact in violation of 18 U.S.C. § 3. On August 28, 2000, she was sentenced to 18 months of imprisonment and two years of supervised release.

Shortly thereafter, Ms. Wesley wrote a letter to the District Court asking for per-mission to withdraw her guilty plea. The Court treated her letter as a motion under 28 U.S.C. § 2255, and appointed counsel to represent her. Counsel filed an amended motion, which the District Court denied in an order dated November 19, 2001. We review the denial of a § 2255 motion *de novo*. *United States v. Cleary*, 46 F.3d 307, 309–310 (3d Cir.1995).

To be entitled to post-sentence relief under § 2255, a defendant must show "a fundamental defect which inherently re-sult[ed] in a complete miscarriage of jus-tice or an omission inconsistent with the rudimentary demands of fair procedure." *Cleary*, 46 F.3d at 311. This is a high standard, indeed, in large part because of the great interest in the finality of judg-ments. *Id.* at 310. This interest in finali-ty has special force when a conviction is based on a guilty plea because of the re-duced risk that unfair procedures resulted in the conviction of an innocent person. *Id.*

■ Ms. Wesley argues, first, that she was entitled to withdraw her guilty plea because she had made a credible claim of actual innocence. She contends that a re-view of the criminal complaint and of the government's recitation of the factual basis for her plea at the plea hearing belie her guilt because, even when viewed in the light most favorable to the government, all that the government's allegations establish is that she was present at the time that a drug transaction occurred. The District Court rejected this contention, finding that the government's allegations, if proven, would establish more than that. As the Court observed, the government alleged that (1) a crime was committed (conspiracy to distribute drugs); (2) Ms. Wesley knew

---

* The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

that the crime was committed (she was present during the drug transaction and received the proceeds of the transaction); and (3) she assisted the individuals who committed the crime by delaying their apprehension (she told the police that the $1900.00 found in her pocket was hers).

Ms. Wesley also argues that her claim of actual innocence is credible because she never admitted that she was a knowing and wilful accessory to the drug offense committed by her son and Morris. However, as the government points out, by the time she filed her motion to withdraw her plea, she had told at least three inconsistent stories about where the money came from. She did not attempt to reconcile the various accounts in that motion and has not attempted to do so in the brief she submitted to us. All she has done is to make a bald assertion of innocence, which is simply not enough. *United States v. Brown*, 250 F.3d 811, 818 (3d Cir.2001).

■ Ms. Wesley argues, next, that her guilty plea should be vacated because the Rule 11 colloquy was defective. She complains, for starters, that the District Court did not make it clear—or at least clear to her—that knowledge and intent are elements of the crime of accessory after the fact. Rule 11 requires that a judge taking a guilty plea "inform the defendant of, and determine that the defendant understands ... the nature of the charge to which the plea is offered." Fed.R.Crim.P. 11(c)(1).

The District Court informed Ms. Wesley of the elements of the crime of acting as an accessory after the fact:

First. That someone else committed a crime, someone other than you. Secondly, that you had actual knowledge of the crime and of the participation of the other person or persons in the crime. And, thirdly, that with that knowledge of this crime, you, in some way, assisted the other persons with the specific pur-

pose or a plan to hinder or to prevent that person's apprehension at trial for punishment.

App. at 71a–72a.

Ms. Wesley was thus told clearly and concisely that knowledge and intent of the underlying crime were elements of the crime to which she was pleading guilty. After the prosecutor presented his summary of the facts, however, the following exchange took place:

THE COURT: Mr. Gleason, before I continued [sic] with the questions, will you consult with Miss Wesley, please, and just verify those facts as to what she did? I am not concerned about other details here.

MR. VALCOVCI: Your Honor, I simply brought those out to show that there was another crime being committed in her presence.

MR. GLEASON: She accepted the money from her son, Robert at that place. The statements she made afterwards when she was arrested, were the statements that she made at that time. However, the evidence shows it was, you know, different, and the main crux of her criminal participation, which was minimal, and which we will advance in our presentence report, is that she did receive this money, and the money came from a, quote, unquote, corrupt sense [sic], and that she took part in a criminal enterprise by secreting, securing and taking the money.

THE COURT: All right.

MR. GLEASON: Which is what any accessory does after the completion of the drug transaction, because she did not deliver the drug.

THE COURT: I didn't understand there to be an allegation that she delivered.

MR. GLEASON: She didn't—I just want to emphasize that to the Court.

THE COURT: Her participation was not that. I understood it.

THE COURT: Miss Wesley, do you agree with your attorney's summarization as to what you did? I am not asking you about the Government's longer recitation, but just his summary as to what you did?

MS. WESLEY: I received the money part? Yes, sir. That is all.

THE COURT: And does it remain your wish to plead guilty to this one count in the information, Miss Wesley?

MS. WESLEY: Yes, sir.

App. at 84a–86a. Given that the crime of acting as an accessory after the fact has as elements knowledge and intent, the District Court's request that Ms. Wesley verify only "those facts as to what she did" had the potential to create confusion because no one, including Ms. Wesley, said during this exchange that she took the money knowing it was drug money or that in some way she protected her son and Morris from the police. Ms. Wesley's statement that she admitted to the "received the money part," but that was "all," further confuses the issue.

In her motion to withdraw her plea, Ms. Wesley stated that "[s]he believed, based on her counsel's advice and the lack of specific explanation of the elements in the colloquy, that her admission of taking the money was enough to make her guilty and support the plea." App. at 35a. She states in her brief to us that if she had been asked (1) whether she knew that the money was the proceeds of a drug transaction, and (2) whether she then acted to prevent the apprehension of those who were involved, she "would have spoken in a completely contrary manner to everything she had otherwise said in this case if she would have admitted such knowledge and intention." Appellant's Brief at 26.

While the above quoted exchange is somewhat confusing, everything else in the record supports the conclusion that Ms. Wesley knew exactly what she was pleading to. First, it is clear from the information itself that knowledge and intent are elements of the crime charged. At the plea hearing, Ms. Wesley told the District Court that she received a copy of that information, understood what it charged her with having done, and that she had had time to consult with her attorney about it. Counsel represented that he had reviewed the information with Ms. Wesley. Thereafter, the District Court explained the elements of the offense to her, and she responded in the affirmative not only when the Court asked her if she understood those elements but again when the Court asked if she admitted her "guilt to the elements of that offense as the government alleges it to have occurred on or about December 1, 1999." App. at 72a. She responded in the negative when the District Court asked if she had any questions about the elements of the crime.

■ Ms. Wesley's second complaint regarding the colloquy is related to the first and similarly fails. She argues that the District Court did not explain that the crime to which she was an accessory after the fact was conspiracy to distribute more than 50 grams of crack cocaine and had she been so informed it "would have alerted her to the nature of the circumstances under which she was entering the plea ... [and] almost certainly would have caused her to protest on the record ... that she was ignorant of and not involved in any drug activity." Appellant's Brief at 29. But Ms. Wesley was originally charged with the very conspiracy of which she claims she was not informed. In addition, the fact that the underlying offense is conspiracy to distribute more than 50 grams

of crack cocaine is set forth in the information to which she pled guilty, the information she had reviewed with counsel and testified she understood. Finally, she was in court when her co-defendants pled guilty to the conspiracy.

■ Ms. Wesley's also complains that the Court failed to apprise her adequately in the Rule 11 colloquy of the maximum sentence she faced.* Under Rule 11(c)(1), the Court is required to "inform the defendant of, and determine that the defendant understands ... the maximum possible penalty." Fed.R.Crim.P. 11(c)(1). The Court informed her that her maximum exposure could not be more than one-half of what her co-defendants faced. While certainly the Court could have been more explicit in terms of years, there is little doubt that Ms. Wesley understood the maximum penalty. She executed a plea agreement which stated that the maximum sentence was 15 years. She also stated at the plea hearing that she had discussed the maximum sentence with her lawyer and that she had no questions as to what it could be.

■ Even if there was a violation of Rule 11, such violations are subject to harmless error analysis. *See* Fed. R.Crim.P. 11(h). Thus, even if the District Court had erred in any respect in the Rule 11 colloquy, reversal is not called for if the error was unlikely to have affected Ms. Wesley's willingness to waive her rights and enter a plea of guilty. *See United States v. Powell,* 269 F.3d 175, 185–186 (3d Cir.2001). Ms. Wesley acknowledged in her brief to us that the plea agreement

offered to her "would be envied by many people facing a charge of conspiracy to distribute more than 50 grams" of crack cocaine and that it was unsurprising that trial counsel thought the agreement was a "rare and unique plea opportunity[.]" Appellant's Brief at 36. Indeed, the extremely favorable terms offered by the government render her claim that she would have gone to trial had there been an error-free Rule 11 colloquy preposterous.

Ms. Wesley also claims that her counsel was ineffective because he (1) wrongly led her to believe that the mere receipt of the money made her guilty; (2) failed to advise her of the elements of the offense or insist that the Court do so; and (3) further confused her when he presented the relevant facts to the Court. She argues, as well, that counsel pressured her to take the plea by telling her that a jury would be likely to find her guilty and that she might get probation or house arrest if she pled guilty despite the fact the jail time was mandatory by virtue of the sentencing guidelines.

In order to make out a claim of ineffective assistance of counsel, Ms. Wesley must show that "(1) her attorney's performance was, under all the circumstances, unreasonable under prevailing professional norms, and (2) there is a 'reasonable probability that, but for counsel's unprofessional errors, the result would have been different.'" *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992)(quoting *Strickland v. Washington,* 466 U.S. 668, 687–696, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.*

---

* In her final complaint addressed to the colloquy, Ms. Wesley argues that the District Court failed to inform her that at trial a jury and not the judge would have to determine—beyond a reasonable doubt—the amount and nature of the drugs that were the subject of the conspiracy. *See Apprendi v. New Jersey,* 530 U.S. 466, 499, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). She does not contend that she would not have pled guilty if she had known this, though, and without such a contention any error is necessarily harmless. *See Cleary,* 46 F.3d at 311. *See also United States v. Williams,* 235 F.3d 858, 863 (3d Cir.2000)(*Apprendi* error is harmless where the defendant is sentenced below the maximum penalty).

■ We have already rejected, albeit in different clothing, Ms. Wesley's first three examples of purported ineffectiveness. We now reject the fourth. There is no reason to believe that counsel's advice regarding Ms. Wesley's chances should she decide to go to trial on the conspiracy charge was unreasonable under prevailing professional norms. Similarly, counsel was not ineffective because he told her that a non-jail disposition was a possibility. Indeed, it *was* a possibility, as evidenced by the fact that the District Court departed downward from the 37–46 month range, albeit only to eighteen months. And, of course, Ms. Wesley does not argue that non-jail time was promised by her attorney, nor could she given her statement at the Rule 11 proceeding that no one had made any promises or predictions with regard to her sentence.

The order of November 19, 2001 will be affirmed.