**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-2484

_____

UNITED STATES OF AMERICA

v.

SHARIF LAYTON,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:17-cr-00112-001)
District Judge:  Honorable Sylvia H. Rambo

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 27, 2025

_____

Before:  BIBAS, PHIPPS, and AMBRO, *Circuit Judges*

(Filed: April 9, 2025)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PHIPPS, *Circuit Judge*.

In this appeal of the denial of a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, an inmate who was sentenced under both federal and state law for robbing multiple banks disputes the validity of the guilty plea he entered on the federal charges. For the reasons below, we will affirm the District Court's denial of his motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 2015, Sharif Layton was charged in Dauphin County, Pennsylvania, for robbing a local bank in January 2011 when he was thirty-two years old. The Court of Common Pleas released him on pre-trial bail in August 2016. After his release, Layton was implicated in three more bank robberies in central Pennsylvania – one in December 2016, one in January 2017, and one in March 2017. On April 12, 2017, a federal grand jury returned a four-count indictment with charges related only to the last of those three robberies – the one in March 2017.[1]

About two weeks later in April 2017, a jury in the Court of Common Pleas found Layton guilty of the 2011 robbery. He was sentenced to prison for a mandatory minimum of 25 years and a maximum of 50 years.

The federal charges against Layton then began to mount. In December 2017, a federal grand jury returned a superseding eight-count indictment, which included charges from the January 2017 bank robbery.[2] Two of the counts in that indictment were for being

---

[1] Layton was charged with (1) one count of conspiracy to commit bank robbery in violation of 18 U.S.C. § 371; (2) one count of bank robbery in violation of 18 U.S.C. § 2113(a); (3) one count of carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c); and (4) one count of possession of a firearm by an armed career criminal in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Each of those last two counts carried a maximum sentence of life in prison. *See id.* § 924(c), (e) (not listing maximum sentences).

[2] The four new charges were for (5) conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371; (6) armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d); (7) brandishing a firearm during and in relation to a crime of violence in violation of

a felon in knowing possession of a firearm, *see* 18 U.S.C. § 922(g), and they indicated that Layton was an armed career criminal – someone with three or more convictions "for a violent felony or a serious drug offense, or both," *id.* § 924(e)(1). If the District Court also concluded that Layton met that criterion for an armed career offender, then each of the felon-in-possession counts would come with a fifteen-year *minimum* sentence instead of a *maximum* sentence of ten years. *Compare id.* § 924(e), *with id.* § 924(a)(2).

Altogether, if Layton had been convicted on all counts, he would have faced up to four lifetimes and 55 years in prison – on top of his 25-to-50-year state-court sentence.[3] Even the most favorable sentence was daunting. Two of the counts – one for brandishing a firearm in furtherance of a crime of violence, *see id.* § 924(c), and a second for carrying a firearm in furtherance of a crime of violence, *see id.* – had mandatory minimum sentences of seven years and 25 years, respectively, and those sentences would have had to run consecutively. *See id.* § 924(c)(1)(A)(ii) (establishing a mandatory minimum of seven years for brandishing a firearm); *id.* § 924(c)(1)(C)(i) (2006) (establishing an additional 25-year mandatory minimum for a second § 924(c) conviction);[4] *id.* § 924(c)(1)(D)(ii)

---

18 U.S.C. § 924(c); and (8) possession of a firearm by an armed career criminal in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The last two offenses came with maximum sentences of life in prison. *See id.* § 924(c), (e).

[3] The two counts of conspiracy carried a maximum sentence of five years in prison for each offense, *see* 18 U.S.C. § 371; the one count of armed bank robbery carried a maximum sentence of 25 years in prison, *see id.* § 2113(d); the one count of bank robbery carried a maximum sentence of 20 years in prison, *see id.* § 2113(a); the two counts of carrying (and, for one count, also brandishing) a firearm during and in relation to a crime of violence carried a maximum sentence of life in prison for each offense, *see id.* § 924(c); and the two counts of possession of a firearm by a felon who qualifies as an armed career criminal carried a maximum sentence of life in prison for each offense, *see id.* §§ 922(g), 924(e).

[4] This subsection has since been amended to establish a 25-year mandatory minimum only for a violation "that occurs after a prior conviction under this subsection has become final," 18 U.S.C. § 924(c)(1)(C) (2018) – so someone now convicted at the same time of three counts of § 924(c) would not be subject to 25-year mandatory minimums on the second and third counts.

(mandating that the sentences be consecutive). Thus, regardless of the sentences he received for the other counts, if he had been convicted of those two § 924(c) charges, Layton's minimum federal sentence would have been 32 years. Combined with the shortest possible state-court sentence of 25 years, Layton's best-case sentencing scenario if convicted on all counts was 57 years in prison with release at age 95.

Layton's prospects got even worse in 2018, when he was identified as a suspect in the December 2016 robbery. If he were convicted of carrying a firearm during three armed robberies, his maximum sentence, if he qualified as an armed career criminal, would be six consecutive lifetimes followed by 80 years in prison – on top of his state-court sentence. *See id.* §§ 924(c), (e), 2113(d). His minimum sentence was similarly intimidating: 57 years on top of the 25-year minimum state sentence, prolonging his release from prison until 2099. *See id.* § 924(c)(1)(A)(ii), (C)(i), (D)(ii) (2006).

At that point, the Government offered Layton a plea deal. On the understanding that Layton would qualify as an armed career criminal, he would have to plead guilty to several offenses: one count of use and brandishing of a firearm during a crime of violence, *see id.* § 924(c); one count of bank robbery, *see id.* § 2113(a); two counts of armed bank robbery, *see id.* § 2113(a), (d); and one count of being a felon in possession as an armed career criminal, *see id.* §§ 922(g), 924(e). In return, the Government would recommend that all but one of the sentences run concurrently with each other and with his state-court sentence. *See* Fed. R. Crim. P. 11(c)(1)(B). The one excepted sentence was the seven-year mandatorily consecutive sentence for brandishing a firearm during a crime of violence. Thus, under the agreement, if accepted by the District Court, Layton's total prison term could be as short as 32 years (25 from the minimum possible state sentence and seven additional from the federal sentence), as opposed to the 82-year minimum he was facing if

convicted on the then-pending federal charges (25 from the state sentence plus seven from the brandishing § 924(c) charge, 25 from the second § 924(c) charge, and 25 from the third § 924(c) charge). Layton took the deal and pleaded guilty.

Before the sentencing hearing, in response to a request by the District Court, the Government asserted that it no longer believed that Layton qualified as an armed career criminal. Layton agreed with that conclusion. He did not, however, seek to withdraw or amend his guilty plea based on that new information. And at the sentencing hearing, the District Court did not consider him an armed career criminal.

Even with that issue resolved and the parties' jointly recommending approval of the plea agreement, the sentencing hearing had some suspense. The District Court had expressed reservations beforehand about approving the recommended plea agreement because it would allow Layton to serve only seven more years in prison for three additional armed robberies. Prior to and at the hearing, both parties encouraged the District Court to accept the deal; neither party made any effort to withdraw or amend it. Those efforts succeeded, and the District Court accepted the recommended 27-year prison sentence: 20 years to be served concurrently and seven to be served consecutively. Because the minimum state sentence was 25 years, by serving the concurrent total 20-year federal sentence, it was possible with only one seven-year consecutive sentence for Layton's total prison term to be 32 years.

Nearly two years later, Layton filed a motion to vacate, set aside, or correct his sentence in the District Court pursuant to 28 U.S.C. § 2255, seeking to withdraw his guilty plea. Layton argued that he pleaded guilty because he had been misled about his status as an armed career criminal and believed that he was subject to a 15-year mandatory minimum for the felon-in-possession charges. The Magistrate Judge held an evidentiary hearing at

5

which Layton testified that an "important" goal in negotiating a plea agreement was to ensure he received as short a *consecutive* sentence as possible. Mot. to Vacate Sentence Hr'g Tr. 18:15–25 (D.C. ECF No. 209); *see also id.* at 18:22–25 (conceding that securing a nonconsecutive sentence was "something that kind of ran throughout all of the plea negotiations in this case"). Following that hearing, the Magistrate Judge issued a Report and Recommendation to deny the motion, which the District Court adopted. Layton filed a timely notice of appeal, and he received a certificate of appealability from this Court permitting him to dispute the denial of his motion to withdraw his guilty plea on the grounds that it was not knowing, intelligent, and voluntary. *See* 28 U.S.C. § 2253(c)(1).

**DISCUSSION**

Because he did not properly object to the Report and Recommendation,[5] Layton's challenge on appeal is governed by the plain-error standard of review.[6] *See Nara v. Frank*, 488 F.3d 187, 196 (3d Cir. 2007). To succeed under that standard, Layton must show, among other things, that the District Court committed an error. *See United States v. Adair*, 38 F.4th 341, 355 (3d Cir. 2022). And here, to establish that the District Court erred in adopting the Report and Recommendation, Layton must demonstrate that he would not

---

[5] Layton filed an objection to the Report and Recommendation, but the identified grounds were only "the reasons previously detailed" in his filings, Obj. to R. & R. (D.C. ECF No. 215), and that is not enough: to be proper, an objection must raise issues with specific portions or recommendations. *See Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984) (per curiam).

[6] The Government argues that Layton cannot challenge his guilty plea at all on collateral review because he failed to challenge the plea on direct review. But while ordinarily, "a defendant has procedurally defaulted a claim by failing to raise it on direct review," *United States v. Garth*, 188 F.3d 99, 106 (3d Cir. 1999) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)), because the Government did not raise that argument in the District Court, it has "los[t] the right to assert the defense," *Trest v. Cain*, 522 U.S. 87, 89 (1997) (quoting *Gray v. Netherland*, 518 U.S. 152, 166 (1996)); *see also Szuchon v. Lehman*, 273 F.3d 299, 321 (3d Cir. 2001).

6

have pleaded guilty had he known that he did not qualify as an armed career criminal. *See United States v. Cleary*, 46 F.3d 307, 311 (3d Cir. 1995).

Layton has not made that showing. After he learned that he did not qualify as an armed career criminal, he did not seek to withdraw or amend his plea – instead, he continued to advocate for its approval by the District Court. Moreover, Layton testified about the importance of avoiding stacked sentences, and unlike sentences for two of the other charges, the sentence for a felon-in-possession conviction – even as an armed career criminal – did not have to be imposed consecutively. *See* 18 U.S.C. § 924(e) (not forbidding a concurrent sentence). And because of the volume of charges against him, Layton's status as a non-armed career criminal had little, if any, practical effect on the duration of his possible sentences. With that status, if he were convicted of all charges related to the three bank robberies, he would face at most three lifetimes and 110 years in prison.[7] That may be less than the six lifetimes and 80 years that he would have faced if he were deemed an armed career criminal, but it would still permit a conviction of more than life in prison. Finally, regardless of his armed-career-criminal status, Layton's best-case scenario if convicted of all charges related to all three robberies was entirely unaffected: he would receive a minimum consecutive sentence of 57 years. *See id.* § 924(c)(1)(A)(ii), (c)(1)(C)(i) (2006). It is exceedingly unlikely, then, that if Layton had known at the time of his guilty plea that he did not qualify as an armed career criminal, he would have rejected the plea agreement – under which he would serve only seven

---

[7] The three § 924(c) counts each carried a maximum sentence of life in prison. The two counts of conspiracy (assuming Layton were not charged with a third for the third robbery) each carried a maximum sentence of five years in prison, *see id.* § 371; the two counts of armed bank robbery each carried a maximum sentence of 25 years in prison, *see id.* § 2113(d); the one count of bank robbery carried a maximum sentence of 20 years in prison, *see id.* § 2113(a); and the three counts of possession of a firearm by a felon each carried a maximum sentence of ten years in prison, *see id.* § 924(a)(2).

additional years in prison for three armed bank robberies – and instead taken on the looming risk of a lifetime in prison. Accordingly, Layton has failed to establish that, even with the correct understanding that he was not an armed career criminal, he would have pleaded differently.

## CONCLUSION

For the reasons above, we will affirm the judgment of the District Court.